**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JULIEN M. HARRIS**                                                                    **PLAINTIFF**

**VS.**                                                                    **CAUSE NO.: 1:06CV276-SA**

**KOCH INDUSTRIES, INC., et al.**                                                        **DEFENDANTS**

### MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

This cause comes for consideration on Defendants', Koch Industries, Inc., Georgia-Pacific Corporation, and Georgia-Pacific Plywood Company, Motion for Summary Judgment. After reviewing submitted briefs and related authorities, this Court is of the opinion that the Motion should be **GRANTED**. Specifically, the Court finds as follows:

### *FACTUAL BACKGROUND*

On May 23, 2006, Julien Harris, an African-American employee of Georgia-Pacific Plywood Company, filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that he was subjected to a hostile work environment. On July 27, 2006, the Commission concluded that based upon its investigation, the information did not establish a violation of the statutes.

On October 6, 2006, Plaintiff Julien M. Harris filed this suit alleging that he is being subjected to a hostile work environment at Georgia Pacific Plywood Company. The allegations aforementioned are predominately based on an email sent by Superintendent Marcus Ray to Bob Clay, Harris' immediate supervisor, which stated:

> BOB:
>     I HAVE BEEN NOTIFIED BY SEVERAL PERSONNEL THAT JULIAN [sic] HARRIS HAS BEEN TIMED FROM 1 HOUR TO AN HOUR AND A HALF HIDING IN HIS FLOOR SWEEPER AROUND THE BOILER ROOM TO DRYER BREAK ROOM AREA. IN FACT A PLUGGER AND A UTILITY PERSON TIMED HIM BY THE CLOCK.

MY SUPERVISORS WILL RECEIVE THIS E-MAIL. THOSE WHO WORK SWING AND RELIEF AND GYD [1] WILL BE REQUIRED TO HAVE JULIAN [sic] WORK AT DRY-HOG, BLOW OUT BOX CAR LINE, DRYER WAREHOUSE, AND CLEAN UP OUTSIDE GREEN END EVERY NIGHT. I WILL INSIST THAT WAYNE SNOW, CHARLIE MCDADE, WILLIE MILES, AND BRAD STEWART WORK THIS MAN AS MUCH AS POSSIBLE. I WILL NOW ALSO HOLD THEM RESPONSIBLE FOR WORKING HIM, AND WILL ASK THEM WHAT HE DID AND WHEN HE DID IT.

I'M TIRED OF CHASING THIS RABBIT. IF YOU CAN HELP RESOLVE THIS SITUATION SINCE HE FALLS UNDER YOUR WATCH IT WOULD BE HELPFUL. WE NEED TO MOVE ON AND GET SOMEONE WHO IS SELF MOTIVATED IN THIS POSITION IF YOU CATCH MY DRIFT.. [sic]

MARCUS RAY

Plaintiff avers that the email contains defamatory statements and a derogatory name, which Plaintiff broadly infers is a racial slur. Further, Plaintiff claims that supervisors and other persons in management called him names such as "rabbit," "white tail," and "silly rabbit," in reference to the email. The Plaintiff alleges that no such email message or name-calling has been directed toward the white employee who holds the same position as the Plaintiff. Plaintiff prays for damages he allegedly suffered based on his emotional, physical, financial, and social well being.

After sufficient discovery was conducted on the allegations, Defendants filed a Motion for Summary Judgment on November 14, 2007.

### *SUMMARY JUDGMENT STANDARD*

To be entitled to summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Rule 56(c) compels the court to grant summary judgment "against a party who fails to

---

[1] Graveyard

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial." Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992) (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2548). In reviewing the motion, the Court must view the evidence submitted in light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

### DISCUSSION

In order to survive a motion for summary judgment in a hostile work environment claim, the Plaintiff must establish that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) that Defendants knew or should have known about the harassment and failed to take prompt action. E.E.O.C. v. W C & M Enter., Inc., 496 F.3d 393, 399 (5th Cir. 2007); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007). Hostile work environment claims must be analyzed under the totality of the circumstances, focusing on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." Walker v. Thompson, 214 F.3d 615, 625 (5th

Cir. 2000) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

Indeed, "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" in order to establish a Title VII violation, <u>DeAngelis v. El Paso Mun. Police Officers Ass'n</u>, 51 F.3d 591, 593 (5th Cir. 1995), but "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that will survive a motion for summary judgment. <u>Hockman v. Westward Commc'ns, LLC</u>, 407 F.3d 317, 328 (5th Cir. 2004).

Although not clear in the complaint and response to Motion for Summary Judgment, Plaintiff believes the phrase "chasing this rabbit" is a racial connotation. However, the Plaintiff never states that this phrase was a racial epithet. Moreover, in his deposition, Plaintiff merely asserts the blanket statement that it offends him in general, with no reference to his race.

Q.[2]   What is it about the third paragraph that offends you?

A.   Well, it says, "I'm tired of chasing this rabbit." I ain't no rabbit.

Q.   So what is it about that –

A.   And he ain't never chased me. He ain't never said anything to me about my work performance.

Q.   What is it that leads you to believe that he's referring to [you] when he says rabbit?

A.   I don't know – I don't know what it is. It ain't my name. I ain't no rabbit. I don't hop around, you know. I ain't no rabbit.

     \*      \*      \*

Q.   Okay. Tell me what this has to do with your race.

A.   Like I said, just calling me by my name. I ain't saying – I ain't saying – just calling me a rabbit. That's all I've got to say about it.

---

[2] The Plaintiff was questioned by Mr. W. Thomas Siler, Jr., counsel for the Defendants.

Q.      The use of the term "rabbit" doesn't have any racial aspect to it, does it?

A.      Does it have racial?

Q.      Yeah. Your lawsuit says you're being discriminated against because of your race. What does the term "rabbit" have to do with race?

A.      Well, it could mean a lot of things in your mind. I don't know.  In your mind, you may say one thing and mean another one. I don't know.

Q.      Well, have you ever heard the term "rabbit" used in a racial context?

A.      Have I ever heard it?

Q.      Right

A.      I don't know. I ain't never heard it about no rabbit. I don't know.

As evidenced by his deposition, Plaintiff broadly states that because of his race, he was discriminated against in the email and by the name-calling at work.  However, the Plaintiff cannot clearly state, nor prove, how the statement is linked to racial discrimination, and the Court fails to link the two as well.

Even if this comment was considered a racial epithet, Plaintiff concedes this was a single instance by the supervisor Marcus Ray.

Q.[3]    Have you ever heard Mr. Ray refer to you with the term "rabbit" on any occasion other than in this email?

A.      No. He ain't never – [sic]. Me and him talk a lot of times.

[sic]

Q.      Have you ever heard Mr. Ray make any statement in any context you consider to be racial?

A.      I ain't never heard it.

_____
[3] The Plaintiff was questioned by Mr. W. Thomas Siler, Jr., counsel for the Defendants.

Plaintiff further states that, following the email, he was subjected to name-calling such as "rabbit," "white tail," and "silly rabbit." Although, Plaintiff concedes this alleged name-calling was performed by predominately black employees, two of those employees were white. Furthermore, Plaintiff is not alleging that, other than the email, any member of management called him a derogatory name. Also, when asked, "Did you ever go to anyone at Georgia-Pacific management and ask them to have any of these individuals not call you these names?" Plaintiff replied, "No, sir." Therefore, management was not aware of the further name calling.

Viewing the totality of the circumstances, the Plaintiff has failed to introduce evidence sufficient for a reasonable jury to find that a hostile work environment existed. The Plaintiff never affirmatively states, and certainly has not proved, that the phrase "chasing this rabbit" is even a racial epithet, and, again, the Court fails to link the two and finds that the alleged "harassment" was not based on a protected characteristic.

Moreover, the "chasing this rabbit" comment is not severe or pervasive harassment as described in Walker. 214 F.3d at 626 (holding that African-American employees who were subjected to a variety of racial slurs were sufficiently severe or pervasive to amount to discrimination); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996) (holding that a jury could find severe or pervasive harassment where plaintiff was subjected to sex-based comments two to three times per week over a long period of time).

Furthermore, Plaintiff concedes this was a single occurrence by management. See Swanier v. Home Depot, U.S.A. Inc., 2007 WL 4292579 *4 (S.D. Miss. 2007) (holding that comments such as "y'all are like a bunch of monkeys" and "only black people have big rear ends" were isolated incidents and not sufficient for a reasonable jury to find a hostile work environment); Turner, 476 F.3d at 348 (holding a reference to inner-city children as "ghetto

children," comments that African-American students attended evening classes because they could not qualify for regular college admission, and expressions of surprise that the African-American plaintiff drove a Volvo and shopped at an upscale shopping center were insufficient for a reasonable jury to conclude that a hostile work environment existed).

Additionally, for the reasons stated above, the Plaintiff has failed to prove the name-calling by his fellow employees, who were not in the management position, amounted to racial discrimination. Plaintiff also did not prove management was aware of the name-calling, and in fact, stated he never notified management, and thus, Plaintiff fails that element as well.

In sum, the "harassment" was not based on a protected characteristic nor was it severe or pervasive harassment. Even assuming the phrase was racially motivated, the Plaintiff concedes it was a single incident by management, which courts have established does not amount to a hostile work environment. Hockman 407 F.3d at 328. In viewing the totality of the circumstances and requisite elements, the Plaintiff has failed to create a genuine issue of material fact which could allow a jury to conclude that a hostile work environment existed.

## CONCLUSION

Plaintiff has not proved that the email is evidence of racial discrimination. Specifically, the Plaintiff has not proved that the phrase "chasing this rabbit" is a racial epithet amounting to discrimination. In sum, Plaintiff has failed to create a genuine issue of material fact which could lead a jury to conclude that a hostile work environment existed.

A separate order shall issue in accordance with this opinion.

This, the 24th day of June, 2008.

/s/ Sharion Aycock_____
**U.S. DISTRICT COURT JUDGE**